Today on Oral Argument, we'll take a brief recess after the second case, and we begin with Southern Hens, Incorporated v. Occupational Safety and Health Review Commission. Mr. Carmody. May it please the court. My name is Steve Carmody. I represent Southern Hens. Southern Hens is a chicken processor in Moselle, Mississippi. It has three separate plants, two cook plants and one slaughter plant. They take spent hens, laying hens, and they convert them into food. We have all that background from the briefs. Thank you. Why don't you move on to your legal points. Thank you, Judge. First, Your Honor, we want to just briefly discuss the facts. This involved two separate machines. One was a tumbler machine and one was a chiller machine. OSHA, after an injury to an employee by the name of Sheila Norman, who was a maintenance employee, she was charged with cleaning out the tumbler machine. The tumbler is like a big colander. It spins and takes the water off of the chicken. She came to work distracted, stuck her hand near the machine in violation of the rules of the plant. It caught her glove and took some flesh off of her thumb. After the injury, we reported it to OSHA. OSHA came in and did an inspection. During the inspection, in addition to asking for the lockout tagout procedures and looking at what happened in the injury, the OSHA inspector went around the plant and he found a couple of other areas. One of the areas was the chiller machine. A chiller machine chills the product as it goes through the process. It's on like a conveyor belt. He found that there was a gap in the conveyor belt and that that gap was a hazard. After the inspection, OSHA issued three violations. One was for failure to maintain proper lockout tagout procedures. One was for the injury that occurred on the tumbler machine and one was for the injury that occurred on the chiller or the hazard that they observed on the chiller machine. After the inspection, we appealed. Mr. Carmody, you're spending a lot of your time on background that we have from the briefs. Would you please just, I'm asking you for the second time, go ahead and move to whatever legal issues you'd like to raise on oral argument. You haven't waived anything that's in your brief, but raise whatever you want to on argument. Okay. Yes, Your Honor. I was just briefly going through the facts, but I was, we have read the briefs and looked at some parts of the record, so we're ready for your legal arguments and you already used up three minutes. The existence of the NIP point violation, I'm going to discuss that first. From a legal standpoint, OSHA can just not come in and say the mere existence of a NIP point violation results in a hazard. OSHA must have some evidence of other injuries in that area or near misses in that area. And it's our position that the Yates case and the Dornan case read together would make the violation improper and it should be vacated by this court. In addition, on the Tumblr machine, the Tumblr machine injury was really a pulley misconduct. It was the only reason why she got hurt. I noticed in your briefs you cited Yates and your position that it was unforeseeable that there would be a serious risk of harm as to either one. As to either one, Your Honor. But then when you look at the record and what the ALJ found, it was difficult for me. You claim in your briefs, both your principle and your reply brief, that Ms. Norman was not instructed to scrub it while it was on. But the ALJ citing to the transcript and citing to Ms. Norman's So then the question is, how can you say it was unforeseeable if she was instructed by both supervisors to scrub it while it was on? Much the same way it was not foreseeable in the Yates case where the foreman was doing things that he should not have been doing in violation of company policy. We had no knowledge of that. We make, and Southern Hens has periodic inspections that they walk through the plant and they never observed this ever. Number one. Number two. But in your brief, you said specifically without record citation that she was not instructed to scrub it while it's on. Now, is that a correct representation of the record? Or did she say that she was instructed by supervisors to scrub it while it was on? She said and testified in the record that she was instructed. So why in your principle brief and your reply brief did you say that she was neither instructed nor ever witnessed if she said that she was and then the ALJ found her to be a credible witness? She first off, let me do address two issues. One, she was told about the rule. She was not to put her hands in your movie machine. I'm just asking you for your brief representations that she was not instructed to when in fact she testified that she was and the ALJ found her to be credible. How do you explain the position you're taking in the brief that there's a rule that she's not to do what she did and then that we did not have any evidence that anybody had told her to act any differently than what the rule said the rule was. We had no idea that this was happening and therefore it's our position that the Yates case applies that we had no way of knowing. Furthermore, even if your supervisors are telling her to do what you say you didn't know she was doing. Much the same way that the foreman in the Yates case did the things that he did and the Fifth Circuit said that's the juxtaposition that was trying to put before the court. Similar to the Yates case where that foreman did things that he was not supposed to do, that is a violation. These supervisors should not have told her if they did, which we don't believe they did, but told her that it was wrong. That was employee misconduct as well as her sticking her hand near the tumbler. You didn't offer any rebuttal evidence. There were only three witnesses at the day trial. When you say to me now we don't believe they did, if the ALJ found that she was credible and she said both of them not only told her but Mr. Webb watched her, I don't see how you can be arguing today there was some clear error as to the ALJ's finding that she was told to do what then led to her amputation. But you're still back into the affirmative defense which we proved, which is she violated a rule and the rule was communicated to her and that rule was applied in a fashion where there's discipline if it was violated. So you say it was a written rule and the written rule you're pointing to is the hands-off rule? That and the lockout rules, yes, combined together. How can she scrub a tumbler, hands to the tumbler, if there's a hands-off rule? How could she ever even do the job she was assigned to do? Violated the rules of the workplace. The hands-off rule? The hands-off rule. But how was she supposed to do it if she can't put her hands on it? Because you can. I think what she testified to, it's easier to do it that way than to lock the machine out and scrub it on the outside. You can get anywhere you need to in that machine. When it's stopped running, you can clean it and you can shut it down from its operation and clean it. So what was in the training materials or any kind of written procedures or the safety meetings that would have specifically told her to lock out the machine before scrubbing the outside? Were these just general instructions or did they specifically talk about locking out and scrubbing from the outside? Initially, OSHA issued a violation that we did not properly have lock-out, tag-out procedures. We provided those to the ALJ and she vacated OSHA's ruling that we did not have lock-out, tag-out procedures. We communicate both the lock-out, tag-out procedures and the hands-off policy at the beginning of employment. There's substantial evidence in the record on pages 15 and 16 of my brief, I think that I cite those, where we communicated not only the lock-out, tag-out procedures but also the hands-off policy. But did those make reference to scrubbing from the outside? No, they did not. Did they even refer to the tumbler? The lock-out, tag-out procedure has a tumbler. It's the tumbler lock-out, tag-out procedure. So yes, it does. And it says that you have to de-energize the machine and clean it. Before you come anywhere near it, you must de-energize the machine. And before you ever come near it? Before your hands or anything else comes near the machine. Because, again, moving machinery is a very dangerous thing in a plant. And these chicken plants have a lot of moving parts in them. And the tumbler is a dangerous machine and the chiller is a dangerous machine. If you're cited for an OSHA violation and you have a rule that says don't do something that your supervisors are telling people to do, do you have any commission precedent that you would point us to as the significance of the written rule that's not being followed by supervisors being relevant to an OSHA violation? I'm not sure I'm following you, but I don't have any authority to that, no. But my position is that we provide the rules. They're supposed to follow the rules. The supervisors are supposed to follow the rules. And if there's any variation from that, it's employee misconduct. And that's an affirmative defense to an OSHA violation. And that's what our position is. Your position was that Webb and Jesse were the misconduct employees. If they indeed did that. Well, okay, we're assuming they did, because that was the factual finding. Did they get cited? Because she was cited for discipline. Did you cite the two of them? I'm not sure there's any record evidence that they were cited. But they should have been. Is it essential to your argument, your position, that she was distracted when she came to work that day? No, I think it helps explain the injury. The injury is unfortunate, but it helps explain the injury. As to the chiller, I thought the substantial evidence that was articulated was that the adjacent conveyor belt had the guard that Hunt told the OSHA inspector that the chickens jammed all the time and the rake was heavy. And therefore, it was foreseeable that people would have to get down and use their hands. I think, Your Honor, once again, if he did violate what we told him to do, which is to use a two-foot-long metal tool to clear the jams and not to get his hands anywhere near the machinery, it was indeed employee misconduct as well. But needless to say, you don't have to guard every single section of the plant. You can guard by distance. And that's what this guarding was. The guarding was by distance, a distance that was effectuated by the metal pole that he used to clear out the food jams. And so therefore, our position is that that should not have been a hazard that we were cited for because the hazard was guarded by distance and we trained the employee on using the tool and we told him not to get his hands near the machine. And in addition to that, there had been no history there of any type of injuries on there. So we had no knowledge that the machine was dangerous or that the nip point was dangerous. And therefore, by the guarding by distance and the actual lack of evidence of any even near misses, my client keeps up with near misses. So no near misses, no injuries. And so therefore, we had no knowledge of a hazard and the violation was improper. Can I go just to the penalties real quick? The penalties were issued here using the Inflation Accountability Act. We think that the specific rules over the general here, the OSHA Act still has $7,000 in penalties as a maximum. The ALJ used $12,741 as a penalty. We think that we cite in our case some law where the specifics should rule over the general. What Congress should do is what they did in the False Claims Act. What Congress should do is to incorporate the Inflation Amendment Act into the OSHA Act. And having not done so, the OSHA Act has only a $7,000 penalty and the specific statute should rule over the general statute. We have a pretty long list of what Congress ought to do. Yes, Your Honor, I know what Congress ought to do, but they did it right in the False Claims Act. They did it right. And they should do it here in the OSHA Act. And until such time as they do that, it's our position that the maximum penalty was $7,000, not $12,741. All right, Mr. Comrie, you've saved time for rebuttal. Yes, thank you, Judge. Thank you. All right, Mr. Gottlieb? May it please the Court, Ron Gottlieb for the Secretary of Labor. Yates is not applicable to this case. Yates involved when you can impute the knowledge of a supervisor to the company. And they, until today, have never argued that the supervisor, Mr. Webb, and the trainer committed misconduct. And in Yates, he noted that the secretary can establish constructive knowledge by showing a deficient program. And the AOJ's credibility finding that she was trained to clean the tumble in the manner that she did it under neither violation establishes that their safety program was not effective in preventing her from cleaning the tumble prior to locking it out. I think there are two potential rules that he may have been referring to about the hands-off law. One of them was the tumble-specific rule from their vendor, which the AOJ found, again crediting Ms. Norman's testimony, she never received and was never trained on. The other one about keeping your hands away from moving parts is irrelevant because it would not have prevented the violation. If she had turned off the machine and scrubbed the outside of it, she still would have violated the lockout-tagout standard, even if that would have prevented the injury. So the vendor rule that the AOJ found she didn't read, it said turn it off even for the outsider, or it didn't draw that distinction? It also didn't, yeah. The AOJ also found that that rule wasn't specific enough to inform her that you had to turn it off the machine before you started scrubbing the outside. But I think more importantly, she credited her testimony that she never got that hold. They keep saying, well, it was available to her. But the employer has to give the employer. Given her testimony and the footnote crediting her testimony, the harder one for me is the chiller because their constructive knowledge is difficult. If there was no injury observed, there never, ever had been an injury reported, and it's undisputed that the company is saying use the rake, how is it possible to say that the company was unnoticed, that someone would get down and use their hands? Well, because the law says that you can't rely on employee behavior to protect against the hazard of a nip point. It was reasonably foreseeable that the employee would use his hand. That's the test. We have to say there's substantial evidence to support the finding that it was reasonably foreseeable that Mr. Hunt would use his hands. So what was the evidence that the ALJS assembled for that reasonably foreseeable finding? Well, the employee said that if it got too heavy, he would get behind if he tried to use the tool. In addition, he had done it for over a 2- to 3-week period, he had used his hands. And another point I want to make, the employee doesn't have to know that it's hazardous. He only has to know what the physical conditions are. This judges whether it's a hazard or not. It's liable for relying on the training. And training to use a tool is not the same as adopting and enforcing a rule not to use your hands. There was no specific rule never to use your hands. His claim in the brief and then today is that OSHA recognizes a, quote, guard by distance. Right, but there's no suggestion in any of the documents that guarding by distance includes guarding by using a tool that brings you within 2- to 3-feet of the nip point. They're talking about when you have no access, you know, that thoughtless or inadvertent action or foreseeable deliberate action to help do the job better or faster would bring you into the nip point. As far as the penalty, Congress did not have to amend Title 29 U.S.C. to authorize an inflation adjustment to OSHAC penalties. It unambiguously did so in the Inflation Adjustment Act. In fact, Southern Hemisphere doesn't offer any interpretation of the Inflation Adjustment Act that would bring it outside, that would exclude the OSHAC from its coverage. Is that issue even implicated here? If neither of the fines exceeded $7,000, why is that issue implicated? Well, I think there's a good argument that she might have assessed a lower penalty at least for the lockout tagout item because she did say they were entitled to some credit For reporting it? I think she said for their size, maybe for the reporting. Oh, that's right. But, you know, if she erroneously assumed that she could have assessed a higher penalty, we wouldn't object to a remand to reconsider the penalty. But it was perfectly appropriate for her to consider the legal regulation that the Secretary adopted and based her proposal on, which was mandated by the Inflation Adjustment Act. I point out that if you have any doubts about it, you could say that they didn't adequately brief the argument because the case that they rely on uses the specific over the general for giving a narrower interpretation to the general statute and therefore saying that it didn't override the more specific statute. Does the record reflect whether Hunt was disciplined also? Hunt was disciplined. For using his hands. That's my recollection. Ms. Newman wasn't disciplined until several months later, but as I think the Court has recognized, the credibility and determination in her testimony I think defeats a challenge to the lockout tagout. Unless the Court has any... All right, thank you, Mr. Gottlieb. Mr. Carmody, you've saved time for a vote. I'll get right to the point, Your Honor. The judge did use the maximum penalty of $12,741 to come to her conclusion of the $7,000. She reduced the penalty of $12,741 max because of the small size of my client and also because it had no past history of OSHA violations. So it is necessary, in looking at her opinion, that you understand that she did use the $12,741. Hunt was disciplined. Norman was disciplined. She was off work for a number of times. She came back to work, then she was off work again, and when she came back to work full-time, she was disciplined when she returned to work. Yates is applicable to this case. Yates and Dornan read together, I think, allows this Court to vacate the violations and to vacate these penalty assessments or, at the very least, change them to de minimis violations and remove the penalties altogether. Thank you, Your Honor. All right, thank you, Mr. Ingram. Your case is under submission. Next here, Schweitzer v. Investment Committee of Phillips 66 State.